**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GRAPHIC ARTS INDUSTRY JOINT PENSION TRUST, MARTY HALLBERG, TRUSTEE,** and **DONALD J. TREIS, TRUSTEE,**<br><br>25 Louisiana Avenue NW<br>Washington, DC 20001<br><br>Plaintiffs,<br><br>v.<br><br>**GRAPHIC EQUIPMENT & SUPPLY, INC.,**<br><br>16200 Clinton Street<br>Harvey, IL 60426<br><br>**UNION GRAPHICS, INC.,**<br><br>1900 Lake Street<br>Dyer, IN 46311<br><br>**DIGITAL GRAPHICS, INC.,**<br><br>2044 164th Place<br>Hammond, IN 46320<br><br>**THOMAS RUCINSKI,**<br><br>1436 Prestwick Drive<br>Schererville, Indiana 46375<br><br>and **TIMOTHY RUCINSKI,**<br><br>847 Killarney Drive<br>Dyer, Indiana  46311<br><br>Defendants. | No. |

## **COMPLAINT**

Plaintiffs, the Graphic Arts Industry Joint Pension Trust ("Pension Trust"), and its authorized Co-Chairman Trustees, Plaintiffs Marty Hallberg ("Hallberg") and Donald J. Treis

("Treis"), bring this Complaint against Defendants Graphic Equipment & Supply, Inc. ("Graphic Equipment"), Digital Graphics, Inc. ("Digital"), Thomas Rucinski and Timothy Rucinski for withdrawal liability incurred by Sheffield Press Printers & Lithographers, Inc., ("Sheffield Press") and state as follows:

## JURISDICTION AND VENUE

1.  This action arises under the Employee Retirement Income Security Act of 1974, ("ERISA"), as amended, 29 U.S.C. § 1145, and by the Multi-employer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381 *et seq.*, to collect withdrawal liability, interest and penalties.  Jurisdiction over this action is pursuant to Sections 502 (e)(1) and (f) of ERISA, 29 U.S.C. §§1132 (e)(1) and (f), and Sections 4221(b)(1) and 4301(c) of the MPPAA, 29 U.S.C. §§ 1401(b)(1) and 1451(c), and 28 U.S.C. § 1331.  Plaintiffs seek enforcement and to redress the provisions of ERISA and the terms of the Pension Fund's Trust Agreement and seek all other appropriate and equitable relief under ERISA.

2.  Count V of this action arises under state law and, as such, this Court has supplemental jurisdiction over that count pursuant to 28 U.S.C. § 1367.

3.  Venue is proper in this court pursuant to ERISA and MPPAA Sections 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), and 28 U.S.C. § 1391, in that the Pension Trust is administered by its Trustees in this judicial district at 25 Louisiana Avenue, N.W., Washington D.C., 20001.

## PARTIES

4.  Plaintiff Pension Trust is a multi-employer pension plan within the meaning of Sections 3(3) and 3(37)(A) of ERISA, 29 U.S.C. §§1002 (3) and (37)(a).  Plaintiffs Co-Chairmen Trustees are plan sponsors as defined in Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B), and

are authorized to bring this action pursuant to Section 4221 (b)(1) of ERISA, 29 U.S.C. § 1401 (b)(1).  Pursuant to ERISA Sections 502(a)(3) and 4301(a)(1), 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), Trustees Hallberg and Treis are authorized to bring this action on behalf of the Plan, its participants, and its beneficiaries for the purpose of collecting withdrawal liability.

5. Defendant Thomas Rucinski is a resident of the state of Indiana.  At all relevant times Thomas Rucinski was President of Sheffield Press.  On December 30, 2011, Sheffield Press filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Indiana, Hammond Division, Case No. 11-24929-jpk (N.D. IN). Thomas Rucinski is being sued in his individual capacity because the facts warrant piercing the corporate veil.

6. Upon information and belief, Defendant Timothy Rucinski is a resident of the state of Indiana. Timothy Rucinski is being sued in his individual capacity based on the trust fund doctrine, the Indiana Fraudulent Transfer Act, I.C. § 32-18-2-1, and because the facts warrant piercing the corporate veil.

7. Defendant, Graphic Equipment and Supply, Inc., ("Graphic Equipment"), was an Illinois corporation that has been dissolved by the Illinois Secretary of State on August 15, 2011. Graphic Equipment is being sued because it is a member of the Sheffield Press controlled group. Timothy Rucinski is president of Graphic Equipment.

8. Defendant, Union Graphics, Inc. ("Union") was an Indiana corporation that has been dissolved by the Indiana Secretary of State on August 15, 2011. Union is being sued because it is a member of the Sheffield Press controlled group.  Timothy Rucinski is president of Union.

9. Defendant Digital Graphics, Inc. ("Digital") was an Indiana corporation that has

been dissolved by the Indiana Secretary of State on August 15, 2011.  Digital is being sued because it is a member of the Sheffield Press controlled group.   Timothy Rucinski is president of Digital.

## FACTS APPLICABLE TO ALL COUNTS

10. Sheffield Press was a signatory to and bound by a series of collective bargaining agreements with the Graphic Communications Conference of the International Brotherhood of Teamsters ("GCC Union") hereafter known as the "Agreements."   At all material times Sheffield Press employed individuals under the Agreements who performed covered work for which contributions were due to the Pension Trust.

11. Sheffield Press was an employer within the meaning of ERISA, 29 U.S.C. §§ 1002(5) and 1301(b)(1).  The Agreements required Sheffield Press to contribute, monthly, to the Pension Trust on behalf of employees doing covered work.

12. The Agreements adopted and bound contributing employers to the terms and conditions of the Pension Trust Agreement and Declaration of Trust, which establishes and governs the Pension Trust.

13. Section 4 of Article VII of the Pension Trust's Agreement and Declaration of Trust permits the Pension Trust's Trustees to take any action necessary, including court action, to enforce payment of contributions to the Pension Trust for participating employees that are past due.

14. Section 502(g) of ERISA, 29 U.S.C. § 1132(g), permits the Pension Trust to assess interest and establish liquidated damages on delinquent amounts of monies owed and entitles the Pension Trust to recover all expenses for collection efforts and reasonable attorney's fees.

Pursuant to its authority granted in Section 4 of Article VI of the Pension Trust's Agreement and Declaration of Trust, the Trustees have adopted a policy of assessing interest on delinquent contributions at the rate of prime plus 2% or 8%, whichever is greater, and liquidated damages on delinquent contributions at the maximum rate of 20% of the unpaid amounts owed, plus costs and attorney's fees.

15. Under ERISA Section 4202, 29 U.S.C. § 1382, when certain conditions are met, a multiemployer plan must assess withdrawal liability to each participating employer that has a complete withdrawal from the Pension Trust.

16. The withdrawal liability assessed to a participating employer when it completely withdraws from the Pension Trust is essentially that participating employer's proportionate share of the multiemployer plan's unfunded vested benefit liability and is based on the participating employer's contribution history to the Pension Trust.

17. In October, 2010, Sheffield Press permanently ceased participating in the Pension Trust and experienced a complete withdrawal as defined in Section 4203 of ERISA, 29 U.S.C. § 1383.

18. On April 14, 2011, the Pension Trust assessed withdrawal liability against Sheffield Press in accordance with ERISA Sections 4202 and 4219(b)(1) in the amount of $267,051.00, as a result of Sheffield Press' complete withdrawal from the Pension Trust triggered by its permanent cessation of contributions to the Pension Trust.  (Exhibit 1)

19. In the notice forwarded on April 14, 2011, by the Pension Trust, the Pension Trust informed Sheffield Press that the amount of withdrawal liability incurred was $267,051.00, plus interest and liquidated damages.  This notice provided that Sheffield Press could discharge its

estimated liability by paying installments starting April 30, 2011, with a final payment on January 31, 2031, or in the alternative, that Sheffield Press had the option of paying its withdrawal liability in a lump sum, together with accrued interest. The letter requested that Sheffield Press provide to the Pension Trust by April 30, 2011, adequate assurances or security that would demonstrate that Sheffield Press was able to meet its withdrawal obligations. The letter further advised that "failure to provide the assurance requested by the Trustees herein is also grounds for a demand for accelerated withdrawal liability payments."

20. The withdrawal liability assessment notification sent to Sheffield Press was forwarded to Sheffield Press by certified mail and the return receipt card reflects that it was signed for and received by the Company.

21. On May 19, 2011, the Pension Trust sent notice to Sheffield Press that it was in default on its payments of withdrawal liability for failure to submit to the Pension Trust its first quarterly withdrawal liability payment of $1,784, and in violation of the Assessment of Withdrawal Liability Procedures of the Pension Trust, because Sheffield Press failed to provide the Pension Trust with adequate assurances or security demonstrating that it would be able to meet its withdrawal obligation to the Pension Trust. The notice demanded that Sheffield Press pay the outstanding amount of withdrawal liability of $267,051.00, plus accrued interest by June 1, 2011. (Exhibit 2).

22. To date, Sheffield Press has not made any withdrawal liability payments to the Pension Trust, never requested review, never initiated arbitration of the Pension Trust's withdrawal liability determination pursuant to ERISA, 29 U.S.C. § 1401(a)(1), nor remitted payment to the Pension Trust. More than 60 days have passed since Sheffield Press received

notice from the Trustees of the demand and schedule of payments for the withdrawal liability amount. Sheffield Press has also not provided the Pension Trust with financial assurances of security as requested by the Trustees.

### MEMBERSHIP IN THE CONTROLLED GROUP PURSUANT TO ERISA § 4201

23. In determining whether entities are considered members of the same controlled group of corporations or to be under "common control," ERISA uses the definition of 'controlled group' found in the Internal Revenue Code, 26 U.S.C. §§ 1563(a) and (d) and 414(b) and (c). Members of the same control group constitute a single employer within the meaning of Section 4001(b)(1) of ERISA, 29 U.S.C. Section 1301(b)(1), and the regulations promulgated thereunder. A single employer is liable for any one members' withdrawal liability.

24. Members of a controlled group are two or more corporations connected through stock ownership. 26 U.S.C. § 1563 (a)(1) and 26 C.F.R. § 1.414c-2(d). Two or more corporations are members of the same controlled group of corporations where a single owner controls at least 80 percent of the total value of all classes of stock of each such corporation. 26 CFR § 1.414(c)-2 (b)(2)(A).

25. At least since 2007, Timothy Rucinski, purchased stock from other family members and was controlling shareholder of Sheffield Press. On or before September 1, 2010, Sheffield Press, Union, Graphic Equipment and Digital were all trades or businesses under common control with Sheffield Press (collectively referred to as the "Sheffield Press Control Group") because at least 80 percent of the total value of stock in each corporate entity was held by Timothy Rucinski. Because of this corporate relationship, members of the Sheffield Press Control Group were under common control as defined by 29 U.S.C. §§ 1002(40)(B) and

7

1301(b)(1), and 26 U.S.C. §§ 1563(a) and (d) and 414(b) and (c).

26. The Pension Trust gave the Sheffield Press Control Group the notice required by Sections 4202(2) and 4219 of ERISA, 29 U.S.C. § 1382(2) and 1399, by letter dated April 14, 2011. (Exhibit A).

27. The Pension Trust gave the Sheffield Press Control Group the notice of default required by Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), by letter dated May 19, 2011. (Exhibit B).

28. The Sheffield Press Control Group failed to make any of the withdrawal liability payments to the Pension Trust required under the payment plan and is therefore in default within the meaning of section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5).

29. The Sheffield Press Control Group did not timely initiate arbitration of the Pension Trust's estimated withdrawal liability determination under section 4221(a)(1) of ERISA, 29 U.S.C. §1401(a)(1), and the determination cannot now be challenged.

30. The Sheffield Press Control Group is an "employer" for the purposes of the determination and assessment of withdrawal liability under Title IV of ERISA, 29 U.S.C. § 1401 et seq.

31. As a result of Sheffield Press Control Group's complete withdrawal from the Pension Trust in October 2010, all trades and businesses constituting the Sheffield Control Group incurred withdrawal liability to the Pension Trust in the amount of $267,051, together with penalties and interest as determined under Section 4201(b) of ERISA, 29 U.S.C. § 1381 (b).

**COUNT I
LIABILITY AGAINST THE SHEFFIELD
PRESS CONTROL GROUP BASED ON DEFENDANT TIMOTHY
RUCINSKI'S ATTEMPT TO EVADE OR AVOID WITHDRAWAL LIABILITY**

32. Plaintiffs reallege and incorporate by reference paragraphs 1 through 31 as paragraph 32 of Count I.

33. At least since 2007, Timothy Rucinski was majority shareholder of Sheffield Press until September 1, 2010, and therefore entities in which Timothy Rucinski owned a controlling interest were members of the Sheffield Press Control Group, which include Union, Graphic Equipment and Digital. On or about September 1, 2010, Timothy Rucinski purportedly transferred his controlling shares of Sheffield Press stock to his brother, Thomas Rucinski, for a note in the amount of $500,000. On information and belief Timothy Rucinski accepted a note from Thomas Rucinski without consideration or collateral in exchange for a transfer of stock. This arrangement was made without a written agreement, by artificially setting the stock price, and by failing to provide a payment schedule or an interest rate.

34. The transfer of Sheffield Press' stock to Thomas Rucinski occurred at the same time as the corporation was insolvent as evidenced by the entry of an Agreed Order for eviction in <u>Joyce A. Bernard v. Sheffield Press, Printers and Lithographers, Inc.</u>, *et al.,* before the Lake Superior Court Civil Division, Case No. 45 D01-1007-PL-00062, Hammond Division. In this cause, the real estate owner of 2040 164th Place, Hammond, Indiana and People's Bank, a secured creditor of equipment, sued Sheffield Press, Graphic Equipment, *inter alia,* and moved for possession of the real estate and the press machinery based on non-payment. (A copy of the Agreed Order is attached hereto as Exhibit 3).

35. The parties to the eviction entered an Agreed Order on September 1, 2010, which


provided for Sheffield Press and Graphic Equipment to vacate the location at 2040 164th Place, Hammond, Indiana, on or before October 30, 2010, or make payment of past due rents and monthly amounts due from July 2010 to the present. Thus, on the same day that Timothy Rucinski transferred Sheffield Press' stock, the parties agreed to surrender the business' real estate and the title to the machinery. On or about September 1, 2010, Sheffield Press, by its President, Thomas Rucinski, and Graphic Equipment by its President, Timothy Rucinski, were aware that Sheffield Press and Graphic Equipment faced imminent termination.

36. As a controlling shareholder of Sheffield Press, Timothy Rucinski's sham transfer of Sheffield Press' stock occurred without providing an economic benefit to either party and occurred at the time when Sheffield Press was insolvent. Under these circumstances, Timothy Rucinski's principal purpose for the transfer of Sheffield Press' stock was to evade or avoid the controlled group's withdrawal liability in violation of 29 U.S.C. § 1392(c).

37. On October 10, 2010, a fire at the 2040 164th Place, Hammond location destroyed equipment and the business of Sheffield Press. At that time, based on the stock ownership prior to the sham transfer, Sheffield Press, Graphic Equipment, Union, and Digital were members of the same controlled group of corporations.

**Wherefore,** Plaintiffs respectfully request the following relief:

A. That judgment be entered in favor of the Pension Trust and against Graphic Equipment, Union, and Digital, jointly and severally, and any other trade or business determined to be in a control group with Sheffield Press pursuant to section 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§(g)(2) and 1451(b) for $267,051 in withdrawal liability; pre-judgment interest on the entire amount of the withdrawal liability assessment beginning on May 19, 2011, the date of

default, computed and charged at an interest rate equal to the P.B.G.C. rate reported by the Board of Governors of the Federal Reserve System; an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages equal to 20% of the unpaid withdrawal liability; and attorneys' fees and costs;

B.   Post-judgment interest computed and charged at an annualized interest rate equal to the P.B.G.C. rate reported by the Board of Governors of the Federal Reserve System;

C.   That this Court retain jurisdiction of this cause pending compliance with the Court's orders, and;

D.   Such further relief as this Court deems just and proper.

## COUNT II
## PIERCING THE CORPORATE VEIL AGAINST THOMAS RUCINSKI

38.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 37 as paragraph 38 of Count II.

39.   As President of Sheffield Press, Thomas Rucinski had control over the Company's bank account which included making deposits and withdrawals on behalf of Sheffield Press. Thomas Rucinski also had control over the Company's payments to its creditors.  In September 2010, Sheffield Press was over 18 months behind in its rent payments for the property at 2040 164th Place, Hammond, Indiana.  Thomas Rucinski continued operating Sheffield Press without adequate capitalization.

40.   Sheffield Press had rental agreements with Graphic Equipment for machinery which included a large press estimated in value of over $600,000 together with other equipment. According its lease agreements, Sheffield Press was required to pay Graphic Equipment, $33,000.

monthly, and, on information and belief, since 2009, Sheffield Press failed to make any payment in connection with the rental of equipment to Graphic Equipment although Sheffield Press continued operations using Graphic Equipment's machinery.

41.     On information and belief, Thomas Rucinski allowed his personal, family and recreational expenses to be paid by the Sheffield Press' operating account, which included payment for gambling, hotels, food and gasoline.  In addition, after Sheffield received payment of over $250,000.00 in insurance proceeds as a result of the fire, Sheffield Press transferred approximately $129,000.00 to Thomas Rucinski's personal account, ignoring the obligations to the Pension Trust as established by the withdrawal liability assessment.

42.     Plaintiffs are entitled to pierce the corporate veil where President Thomas Rucinski operated Sheffield Press without adequate capital, failed to observe corporate formalities, failed to keep Sheffield Press' financial transactions at arms length, and permitted Sheffield Press to transfer funds to its shareholder rather than paying the debt owed to the Pension Trust.

**Wherefore**, Plaintiffs respectfully request the following relief:

A.   That judgment be entered in favor of the Pension Trust and against Thomas Rucinski, pursuant to section 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), for $267,051 in withdrawal liability; pre-judgment interest on the entire amount of the withdrawal liability assessment beginning on May 19, 2011, the date of default, computed and charged at an interest rate equal to the P.B.G.C. rate reported by the Board of Governors of the Federal Reserve System; an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages equal to 20% of the unpaid withdrawal liability; and attorneys' fees and costs;

B.   Post-judgment interest computed and charged at an annualized interest rate equal to

the P.B.G.C. rate reported by the Board of Governors of the Federal Reserve System;

C.  That this Court retain jurisdiction of this cause pending compliance with the Court's orders, and;

D.  Such further relief as this Court deems just and proper.

### COUNT III
### PIERCING THE CORPORATE VEIL AGAINST TIMOTHY RUCINKSI

43. Plaintiffs reallege and incorporate by reference paragraphs 1 through 42 as paragraph 43.

44. Timothy Rucinski was the President and owner of Graphic Equipment, the entity that leased printing press machinery to Sheffield Press.

45. On information and belief, machinery and equipment leased by Graphic Equipment to Sheffield Press was originally purchased by Sheffield Press but later transferred to Graphic Equipment, a separate corporation.  Graphic Equipment's machinery included a five color press, an offset printing press system, and other related machinery for use in the printing business.  On information and belief, the price of equipment leased by Graphic Equipment to Sheffield Press was artificially determined by Timothy Rucinski acting in his own financial interest.  According to the lease, Sheffield Press was obligated to pay Graphic Equipment a sum of approximately $33,000.00, monthly.  In all of 2009 through and including operating months in 2010, Sheffield Press failed to make any monthly payments to Graphic Equipment, and Graphic Equipment did not file a lawsuit to collect rent payments and remove the equipment under the terms of the lease.

46. At all material times, Timothy Rucinski's companies, such as Graphic Equipment, Digital, and Union together with Sheffield Press, were covered by a single insurance policy. Sheffield Press paid the premiums for coverage on behalf of each corporate entity.

47. Timothy Rucinski created and conducted a scheme of interrelated corporations which included Digital, Graphic Equipment, Union, and Sheffield Press for his own personal gain. Timothy Rucinski operated these corporations under terms that were not determined at arms length permitting undercapitalized entities to continue accruing debt, while protecting equity in assets held by entities that did not accrue debt. By these practices, Plaintiffs are entitled to pierce the corporate veil of the Graphic Equipment, Digital and Union to reach the liability of Timothy Rucinski.

**Wherefore**, Plaintiffs respectfully request the following relief:

A. That judgment be entered in favor of the Pension Trust and against Timothy Rucinski, pursuant to section 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), for $267,051 in withdrawal liability; pre-judgment interest on the entire amount of the withdrawal liability assessment beginning on May 19, 2011, the date of default, computed and charged at an interest rate equal to the P.B.G.C. rate reported by the Board of Governors of the Federal Reserve System; an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages equal to 20% of the unpaid withdrawal liability; and attorneys' fees and costs;

B. Post-judgment interest computed and charged at an annualized interest rate equal to the P.B.G.C. rate reported by the Board of Governors of the Federal Reserve System;

C. That this Court retain jurisdiction of this cause pending compliance with the Court's orders, and;

D. Such further relief as this Court deems just and proper.

### COUNT IV
### SHAREHOLDER LIABILITY AGAINST TIMOTHY
### RUCINSKI FOR VIOLATION OF THE TRUST FUND DOCTRINE

48. Plaintiffs reallege and incorporate by reference paragraphs 1 through 47 of this Complaint as paragraph 48.

49. For the period from January 2011 through July 30, 2011, the Peerless Insurance Company paid insurance benefits to Union, Graphic Equipment, and Digital based on loss claims due to a fire which occurred on October 10, 2010, at 2040 164th Place, Hammond, Indiana.

50. On information and belief, no corporate operations were conducted by Digital, Graphic Equipment and Union after receipt of payment from Peerless Insurance Company. On or about August 15, 2011, Union, Digital, and Graphic Equipment were dissolved by the Indiana and Illinois Secretary of State's office.

51. On information and belief, payments received from insurance claims were directly or indirectly transferred to Timothy Rucinski and/or to Trusts operated by Timothy Rucinski on behalf of himself or other family members.

52. Under federal common law, the trust fund doctrine allows courts to place a constructive trust on any assets distributed to shareholders after a pension fund's unpaid withdrawal liability claim arises.

53. A pension fund alleging a violation of the trust fund doctrine is not required to show that the Company or its shareholder knew of the unpaid withdrawal liability claim at the time of the shareholder distribution.

54. The Pension Trust's withdrawal liability claim against Sheffield Press arose the

instant that Sheffield Press ceased operations and thus permanently ceased to have an obligation to contribute to the Pension Trust.

55. All shareholder distributions or transfers that Digital, Union, and or Graphic Equipment paid to Timothy Rucinski after the Digital, Union and Graphic Equipment ceased operations violated the trust fund doctrine and are subject to recovery by the Pension Trust.

**Wherefore**, Plaintiffs respectfully request the following relief:

A.  That judgment be entered in favor of the Pension Trust and against Timothy Rucinski, pursuant to section 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b) for $267,051 in withdrawal liability; pre-judgment interest on the entire amount of the withdrawal liability assessment beginning on May 19, 2011, the date of default, computed and charged at an interest rate equal to the P.B.G.C. rate reported by the Board of Governors of the Federal Reserve System; an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages equal to 20% of the unpaid withdrawal liability; and attorneys' fees and costs;

B.  Post-judgment interest computed and charged at an annualized interest rate equal to the P.B.G.C. rate reported by the Board of Governors of the Federal Reserve System;

C.  That this Court retain jurisdiction of this cause pending compliance with the Court's orders, and;

D.  Such further relief as this Court deems just and proper.

## COUNT V
## SHAREHOLDER LIABILITY AGAINST TIMOTHY RUCINSKI
## BASED ON A VIOLATION OF THE INDIANA FRAUDULENT TRANSFER ACT

56. Plaintiffs reallege and incorporate by reference paragraphs 1 through 55 of this Complaint as paragraph 56.

57.     At the time that Digital, Union and Graphic Equipment transferred assets to the personal account of Timothy Rucinski, Timothy Rucinski was aware of the withdrawal liability owed to the Pension Trust.

58.     As a transferee of proceeds from Digital, Union, and Graphic Equipment to Timothy Rucinski, all transactions are voidable as fraudulent transfers pursuant to the Indiana Fraudulent Transfer Act, I.C. § 32-18-2-1, et seq.

**Wherefore**, Plaintiffs respectfully request the following relief:

A.   That judgment be entered in favor of the Pension Trust and against Timothy Rucinski, pursuant to section the Indiana Fraudulent Transfer Act, § 32-18-2-1 *et seq,* sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b) for $267,051 in withdrawal liability; pre-judgment interest on the entire amount of the withdrawal liability assessment beginning on May 19, 2011, the date of default, computed and charged at an interest rate equal to the P.B.G.C. rate reported by the Board of Governors of the Federal Reserve System; an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages equal to 20% of the unpaid withdrawal liability; and attorneys' fees and costs;

B.    Post-judgment interest computed and charged at an annualized interest rate equal to the P.B.G.C. rate reported by the Board of Governors of the Federal Reserve System;

C.   That this Court retain jurisdiction of this cause pending compliance with the Court's orders, and;

D.   Such further relief as this Court deems just and proper.

Dated: December 2, 2013

        Respectfully submitted,

        O'DONNELL, SCHWARTZ & ANDERSON, P.C.


        By:   /s/Peter J. Leff
            Peter J. Leff
            DC Bar No. 457476
            1300 L Street, N.W., Suite 1200
            Washington, DC 20005
            Telephone: (202) 898-1707
            Facsimile: (202) 682-9276
            E-mail: pleff@odsalaw.com


        Counsel for Graphic Arts Industry Joint Pension Trust; Marty L. Hallberg, Trustee; and Donald J. Treis, Trustee


Karen I. Engelhardt
Allison, Slutsky & Kennedy P.C.
230 West Monroe Street, Suite 2600
Chicago, Illinois 60606
(312) 364-9400
Fax: (312) 364-9410
kie@ask-attorneys.com
Illinois Bar: 312880